UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                                         Crim. Action No. 5:11–cr–158

Jaimour Anderson

**REPORT AND RECOMMENDATION**
(Doc. 101)

      Defendant Jaimour Anderson, proceeding through counsel, moves under 28 U.S.C. § 2255 to correct his federal sentence following vacatur of a prior state conviction. (Doc. 101.) On August 8, 2012 Anderson waived his right to proceed by means of Indictment and entered a plea of guilty to a Superseding Information, which charged him with engaging in a conspiracy to distribute cocaine base between March and November 2011, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), and one count of conspiracy to possess firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o). (Doc. 47 at 1, ¶ 1; *see also* Doc. 46.) On November 27, 2012, Anderson was sentenced to a total term of imprisonment of 139 months. (Docs. 71, 100.) On April 5, 2018, following revelations of misconduct committed by a state chemist employed at a Massachusetts State Police laboratory, the Massachusetts Supreme Judicial Court vacated Anderson's 2006 state conviction for marijuana possession. (Doc. 101-1.) On that basis, Anderson now seeks resentencing for his federal conviction. The court held a hearing on the § 2255 Motion on November 13, 2019.

For the reasons stated below, I recommend that Anderson's § 2255 Motion (Doc. 101) be DENIED.

## Factual and Procedural Background

### I. The Charge and Plea Deal

On August 8, 2012, Anderson pleaded guilty to one count of conspiracy to distribute cocaine base between March and November 2011, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), and one count of conspiracy to possess firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o). (Doc. 47 at 1, ¶ 1; *see also* Doc. 46.) As part of the plea agreement, Anderson stipulated that he conspired to distribute between 840 and 2800 grams of cocaine base. (Doc. 47 at 2, ¶ 4.) Among other conditions, the government agreed that: (1) Anderson would not be prosecuted in the District of Vermont for any other criminal offenses known to the United States to have been committed by Anderson in the District of Vermont relative to the distribution of cocaine base and the possession of firearms; and (2) the government would recommend that Anderson receive a three-point offense level reduction for timely acceptance of responsibility under United States Sentencing Guideline (USSG) § 3E1.1(a) and (b). (*Id.* at 4–5, ¶ 11.) The parties further agreed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that "the appropriate term of imprisonment the Court should impose is between 120 and 262 months." (*Id.* at 6, ¶ 16.)

## II. The Presentence Investigation Report and Sentencing

In October 2012,[1] a Presentence Investigation Report (PSR) was prepared by the United States Probation Office and submitted to the court in anticipation of sentencing. Based on the parties' reasonable estimate and stipulation as to the quantity of cocaine base involved in the offense, the PSR placed Anderson's base offense level at 34. (PSR at 10–11, ¶ 37.) However, his offense level was increased by two levels for possession of a firearm under USSG § 2D1.1(b)(1) and an additional two levels for a credible threat of violence under USSG § 2D1.1(b)(2), resulting in an adjusted offense level of 38. (*Id.* at 11, ¶¶ 38, 42.) Pursuant to USSG § 3E1.1(a) and (b), three levels were subtracted from the offense level calculation because Anderson manifested a timely acceptance of responsibility. (*Id.* ¶ 43.) These adjustments resulted in a total offense level of 35. (*Id.* ¶ 46.)

Anderson's prior convictions, which included a 2006 conviction for possession of marijuana sustained in the Springfield, Massachusetts state district court, yielded twelve criminal history points, placing him in Criminal History Category (CHC) V. (*Id.* at 16, ¶ 61.) It is unclear from the PSR how many criminal history points the 2006 marijuana conviction contributed to the CHC calculation, given that the marijuana possession charge was joined with a charge of possession of stolen property. Anderson was convicted of both counts in the Springfield court, and the

---

[1] The PSR was amended on November 28, 2012.

convictions were assigned two points in the PSR.[2] (*Id.* at 14, ¶ 56.) Based on an adjusted offense level of 35 and a CHC of V, the PSR concluded that Anderson faced an advisory Sentencing Guidelines imprisonment range of 262–327 months. (*Id.* at 23, ¶ 94.)

On November 27, 2012, Anderson appeared before United States District Judge Christina Reiss for sentencing. (Doc. 100.) After ruling on Anderson's objections to the factual information set forth in the PSR, the court accepted the PSR's guideline imprisonment range of 262–327 months and the Rule 11(c)(1)(C) plea agreement's binding range of 120–262 months. (*Id.* at 39:6–9, 39:14–16.) In determining an appropriate sentence, the court engaged in a thorough analysis of the statutory sentencing factors set forth in 18 U.S.C. § 3553(a). The court noted that the stipulated quantity of cocaine base could have triggered a mandatory minimum sentence of 120 months and that Anderson also could have been charged under 18 U.S.C. § 924(c), which would have added another five years to the sentence. (*Id.* at 14:1–19.)

The court explained that it was declining to impose a sentence at the high end of the stipulated range because Anderson was not similar to other defendants in the District of Vermont who receive such sentences and whose criminal histories

---

[2] The government posits that the stolen property conviction accounts for the two points under USSG § 4A1.1(b) because Anderson was sentenced to one year of imprisonment on that count, whereas the marijuana conviction is simply noted as "Filed." (Doc. 108 at 4 n.2.) Accordingly, the government concludes, it "was not even accounted for in the criminal history calculation." (*Id.*) Anderson counters that, even absent the accompanying stolen property conviction, the marijuana conviction still would have contributed one point under USSG § 4A1.1(c). (Doc. 111 at 9 n.6.) In support of his contention, he points to the convictions listed in PSR ¶ 57, which carry the same "Filed" notation and which counted for one point under § 4A1.1(c). (*Id.*)

were littered with major drug trafficking crimes. (*Id*. at 44:22–45:18; *see also id*. at 16:1–16, 26:19–25.) However, the court concluded that 120 months, the low end of the stipulated range, did not sufficiently reflect the seriousness of the offense and that it was "increas[ing] the sentence from 120 to reflect [Anderson's] firearms and for threatening people." (*Id*. at 45:19–23, 46:5–6.) No reference was made to the 2006 marijuana conviction at the sentencing proceeding. The court ultimately sentenced Anderson to a term of 139 months.[3] (*Id*. at 46:12–14.) He did not file an appeal.

### III. The Farak Scandal and Vacatur of 2006 State Marijuana Conviction

In January 2013, it was revealed that Sonja Farak—a forensic chemist then employed by the Massachusetts State Police—had been consuming drug reference standards, tampering with police-submitted drug samples, and otherwise performing work under the influence of drugs. (Doc. 108-2 at 2–5.) Farak was indicted on April 1, 2013 and convicted on January 6, 2014 on charges associated with these improprieties. (*Id*. at 4.) Initially, it was thought that Farak's misconduct was limited to the period from July 2012 to January 2013. *See Commonwealth v. Cotto*, Indictment No. 2007770, 2017 WL 4124972, at *1 (Mass. Super. Ct. June 26, 2017). In November 2014, however, the Massachusetts Attorney General's Office turned over to local prosecutors documents showing that Farak's misconduct extended back to 2011. *Id*. at *31. These documents were then

---

[3] Anderson was sentenced to 139 months for conspiracy to distribute cocaine base and 22 months on the firearms charge, to run concurrently. (Doc. 71 at 2.)

5

disclosed to defendants seeking review of their convictions that had been supported by drug analysis certificates signed by Farak.[4]  *Id.* at *1.

On April 8, 2015, in *Commonwealth v. Cotto*, 27 N.E.3d 1213 (Mass. 2015), the Massachusetts Supreme Judicial Court issued a decision calling for an official investigation into the timeline and scope of the Farak scandal.  After reviewing the information then known about Farak's corrupt activities, the court vacated the trial court's denial of a motion brought by Defendant Erick Cotto, Jr. who had sought to withdraw his guilty plea.  The case was remanded to the trial court for further factual findings concerning Farak's activities.  On April 1, 2016, following an investigation, the Massachusetts Attorney General's Office issued a report revealing that Farak's misconduct dated back to "late 2004 or early 2005." (Doc. 108-2 at 9.)

Other affected defendants commenced litigation on September 20, 2017, seeking to vacate their prior Massachusetts convictions.  (Doc. 111 at 4–5.)  Anderson's 2006 conviction for possession of marijuana was vacated in an April 5, 2018 Declaratory Judgment order of the Massachusetts Supreme Judicial Court.  (Doc. 101-1.)  On October 11, 2018, that court issued a "more inclusive remedy" order, directing dismissal with prejudice of additional cases that met certain specified criteria.  *Comm. for Pub. Counsel Servs. v. Attorney Gen.*, 108 N.E.3d 966, 989 (Mass. 2018); *see id.* at 992–93.

---

[4] The fact that such discovery had been withheld was apparently not made known until it was discussed in the state court's June 26, 2017 order.

## IV.   Section 2255 Motion

On April 3, 2019, Anderson filed the instant § 2255 Motion to Correct Sentence. (Doc. 101.) Anderson argues that his "sentence was driven in large part by his prior criminal history" (*id.* at 1), and that "the existence of prior state drug convictions without question resulted in a longer sentence" (*id.* at 3). He posits that, although his sentence was well below the range called for by the advisory Sentencing Guidelines and that his Guideline range would likely not change as a result of the state vacatur, "[t]he elimination of a prior drug sentence is likely to have yielded an even lower sentence." (*Id.*) In other words, Anderson maintains that because his 2006 Massachusetts marijuana conviction was vacated, he is entitled to a reduced sentence, and the continued imposition of the 139-month sentence "results in a manifest injustice." (*Id.*)

The government argues in opposition that Anderson's Motion is untimely because he failed to exercise due diligence in seeking vacatur of his 2006 state conviction and failed to articulate an extraordinary circumstance that prevented him from filing sooner. (Doc. 108 at 10–12.) The government further argues that Anderson is not entitled to collateral relief because he cannot demonstrate that his sentence constitutes a miscarriage of justice. (*Id.* at 12–17.) Specifically, the government avers that: (1) no criminal history points were accorded in the PSR for Anderson's marijuana conviction, and, even assuming the two points allocated for the accompanying stolen property conviction are subtracted, his CHC category and therefore the applicable Guidelines range remains the same; (2) the 139-month

7

sentence imposed pursuant to Rule 11(c)(1)(C) fell at the low end of the stipulated range, well below the advisory range under the Sentencing Guidelines, and below the sentence Anderson would have received if he had been charged with mandatory minimum crimes; and (3) no evidence suggests that the court considered the marijuana conviction in calculating the sentence. (*Id.*)

Anderson replies that his Motion is timely and he was diligent in seeking state court relief. Anderson places reliance on the following: the Massachusetts prosecutors failed to disclose important documents showing that Farak's misconduct dated back to 2011; the state court placed the duty to investigate the scope of the misconduct on the state government; and the court preferred to adjudicate claims on a large scale via issuance of a global remedy rather than through individual litigation. (Doc. 111 at 2.) Moreover, Anderson asserts that the marijuana conviction contributed at least one point to the calculation of his CHC. (*Id.* at 9 n.6.) Finally, Anderson submits that, because the court specifically differentiated his sentence from that imposed on defendants with prior drug trafficking offenses, the absence of his 2006 drug possession conviction likely would have resulted in an even lower sentence. (*Id.* at 10.)

## Analysis

### I.     Legal Standards Governing § 2255 Motions

As noted above, Anderson has now moved to vacate his sentence based on the state court's vacatur of the 2006 marijuana possession conviction. A person in custody under a sentence of a federal court may seek to correct that sentence under

28 U.S.C. § 2255(a) if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack."  Relief under § 2255 for non-constitutional claims is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks omitted); *see United States v. Addonizio*, 442 U.S. 178, 185 (1979).  As the Second Circuit has instructed, § 2255 review is "narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (quoting *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996)).  The petitioner bears the burden of establishing that he is entitled to relief under § 2255.  *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

## II. Statute of Limitations

The government contends that Anderson's Motion is barred by the one-year statute of limitations that governs § 2255 motions pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Under 28 U.S.C. § 2255(f), the one-year limitations period begins from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

9

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Anderson's Motion is untimely under subsection (f)(1). His federal judgment became final on December 12, 2012, 14 days after judgment was entered on November 28, 2012. *See* Fed. R. App. P. 4(b)(1)(A). Yet Anderson waited until April 3, 2019 to file his § 2255 Motion, well after the one-year limitations period had expired.

### A. Section 2255(f)(4) and *Johnson v. United States*

Anderson argues, however, that his Motion is timely under *Johnson v. United States*, 544 U.S. 295 (2005). In *Johnson*, the United States Supreme Court held that vacatur of a predicate state conviction constitutes a new "fact" under § 2255(f)(4), triggering a renewed one-year limitations period in which to seek collateral review of a federal sentence. *Id.* at 302, 308. But a petitioner may only take advantage of this provision if he "has shown due diligence in seeking the [vacatur] order." *Id.* at 302. The Court elucidated that "diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence." *Id.* at 308. The date on which federal judgment is entered is presumptively the date on which the duty of due diligence is activated. *Id.* at 309. In *Johnson*, the Supreme Court held that the defendant failed to

10

exercise due diligence by waiting three years to challenge his previous state conviction, making § 2255(f)(4) unavailable. *Id.* at 311.

Here, by filing his § 2255 Motion on April 3, 2019, Anderson has acted within one year of the April 5, 2018 vacatur of his state conviction. But that is not enough under *Johnson*. *Id.* at 307 (rejecting proposition that petition is automatically timely if filed within one year from state vacatur, "no matter how long he may have slumbered before starting the successful proceeding"). Anderson must also establish that he was diligent in his efforts to attack his 2006 state conviction. *Id.* at 308. Given the unique circumstances giving rise to Anderson's challenge of the state conviction, the question is when his duty of due diligence was triggered.

As stated, *Johnson* set the presumptive diligence date as the date of entry of the petitioner's later federal judgment. *Id.* at 309. The Court in *Johnson* recognized, however, that "the facts underlying the challenge to the state-court conviction might themselves not be discoverable through the exercise of due diligence until after the date of the federal judgment." *Id.* at 310 n.8. In such circumstances—as here—the petitioner's duty to act diligently begins "once the facts become discoverable." *Id.*

The government argues that Anderson's duty of diligence began in early 2013, "when the issue of misconduct in Massachusetts drug labs came to the public's attention." (Doc. 108 at 10.) But Anderson contends his duty was not triggered until years later, on June 26, 2017, when the state Superior Court issued its order explicating "not simply the nature of Ms. Farak's wrongdoing but the

11

egregious governmental misconduct on the part of the attorneys for the Commonwealth." (Doc. 111 at 4 n.3.) Anderson claims that date is appropriate because it was not until then that he learned the full scope of the Farak scandal. (*Id.* at 3–4.) The court finds neither date applicable.

While the government accurately states that Farak's misconduct first became public knowledge in 2013, the fact that Farak abused drugs while employed in the in the lab as far back as 2004 or 2005 was not revealed until April 1, 2016. (*See* Doc. 108-2 at 9.) Thus, the relevant facts underlying the challenge to Anderson's 2006 state court conviction were not fully discoverable in 2013 when the news of Farak's misconduct first broke. Moreover, Anderson's claim that his duty to seek vacatur did not activate until publication of the June 26, 2017 state court order is unpersuasive, as that order revealed only that Farak was using drugs in the lab in 2011, *see Cotto*, 2017 WL 4124972, at *31, which would provide no basis for attacking Anderson's 2006 marijuana conviction.[5] It was the earlier April 1, 2016 Report of the Massachusetts Attorney General that revealed Farak's misconduct began as early as 2004 or 2005. (*See* Doc. 108-2 at 9.)

---

[5] Likewise, to the extent Anderson posits that publication of the June 26, 2017 order justifies application of § 2255(f)(2), this argument fails for similar reasons: the documents discussed in the state court's June 26, 2017 order and withheld by the state's attorneys relate only to Farak's misconduct in 2011, while Anderson's marijuana conviction is from 2006. Moreover, revelations that Farak's misconduct dated back to at least 2005 were previously noted in the April 1, 2016 report. Anderson fails to show how the state's attorneys' withholding of these documents *caused* his failure to timely file a § 2255 motion. *See United States v. Carrasquillo*, Crim No. 2:99-cr-108-1-wks, 2018 WL 6494268, at *4 (D. Vt. Aug. 28, 2018) (slip op.) (noting that § 2255(f)(2) requires showing that government action "impeded" petitioner's ability to file within statute of limitations), *report and recommendation adopted*, 2018 WL 6446866 (D. Vt. Dec. 10, 2018); *cf. United States v. Osmanson*, No. 1:08-cr-119-jgm-01, 2014 WL 5587009, at *7 (D. Vt. Oct. 31, 2014) (noting § 2255(f)(2) burden is on petitioner).

Accordingly, the court finds that on April 1, 2016, the facts underlying Anderson's challenge became discoverable and thus triggered his duty of diligence under *Johnson*.⁶ On that date, Anderson was "in a position to realize that he ha[d] an interest in challenging the prior conviction," *Johnson*, 544 U.S. at 308, yet he failed to take "prompt action" to seek vacatur of his 2006 marijuana conviction. Anderson failed to file any papers until September 20, 2017, over 17 months after the April report was issued, and he has not alleged any facts demonstrating that he acted diligently during those 17 months. (Doc. 111 at 4.)⁷ *See, e.g., United States v. Cintron*, 281 F. Supp. 3d 241, 243 (D. Mass. 2017) (denying relief where petitioner failed to file § 2255 petition within one year of underlying facts regarding drug lab chemist misconduct becoming discoverable). Because Anderson failed to act with the diligence required under *Johnson*, Anderson's § 2255 Motion is untimely.

Insofar as Anderson claims the "more inclusive remedy" order issued by the state court excuses or "conclusively resolves the diligence question" (Doc. 111 at 6), the argument is unpersuasive. The cited order, *Comm. for Pub. Counsel Servs.*, 108 N.E.3d 966, was not issued by the state court until October 11, 2018, over two years after the release of the April 2016 report that triggered Anderson's duty

---

⁶ Anderson also appears to argue that he was diligent in light of the state court's finding that it was the duty of the Commonwealth—and not individual defendants—to discover the scope of Farak's misconduct. (Doc. 111 at 5.) But even accepting that contention as true, that would merely postpone the diligence date until April 1, 2016 when the Massachusetts Attorney General's Office concluded its investigation and issued its report, not until June 26, 2017, as Anderson asserts.

⁷ Though this inquiry focuses on Anderson's pre-vacatur diligence, the court also notes that Anderson delayed the filing of his § 2255 Motion, waiting almost one year after the state vacatur. This unexplained delay further underscores Anderson's failure to exercise due diligence.

13

of diligence.[8]  Moreover, the order was issued months *after* Anderson's conviction was vacated on April 5, 2018; thus the order cannot operate to excuse Anderson's failure to exercise diligence in seeking such vacatur, as required under *Johnson*.

Finally, at the November 13, 2019 hearing, counsel argued that Anderson relied on the similarities of Farak's misconduct to a second Massachusetts drug lab scandal involving a different disgraced chemist, Annie Dookhan, who had engaged in misconduct at another facility, to conclude that cases such as these should be resolved in a systemic manner, and that he acted diligently because such an assumption was reasonable.  This contention, however, is undermined by the simple fact that the state court in the Dookhan scandal explicitly declined to adopt a global remedy.  *See Bridgman v. Dist. Attorney for Suffolk Dist.*, 67 N.E.3d 673, 692 (Mass. 2017) (stating "we reject the global remedy proposed by the . . . petitioners" and adopting specific protocol for case-by-case adjudication).  Consequently, Anderson's reliance on the Dookhan case for this premise is misplaced and, as described above, he has failed to establish the requisite diligence.

## B.   Equitable Tolling

Nor is Anderson entitled to equitable tolling of the statute of limitations, which "applies only in the rare and exceptional circumstance[]." *Smith v. McGinnis*,

---

[8] At the court's November 13, 2019 hearing, Anderson suggested that the state court's June 2017 order indicated that the court preferred to craft a systemic remedy rather than manage individual litigation by each affected defendant. The June 2017 opinion, however, does not support Anderson's proposition; to the contrary, the court there considered the circumstances surrounding each individual defendant bringing a claim. *See generally Commonwealth v. Cotto*, Indictment No. 2007770, 2017 WL 4124972 (Mass. Super. Ct. June 26, 2017).  The state court ultimately did not endorse a systemic remedy until the October 11, 2018 opinion. Moreover, Anderson's Reply (Doc. 111) cites the October 11, 2018 opinion—not the June 26, 2017 opinion—in support of his argument regarding the state court's preference for a systemic remedy.

14

208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (alteration in original) (internal quotation marks omitted).  The Second Circuit has made clear that tolling is appropriate only if the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and *prevented timely filing*."  *Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010) (internal quotation marks omitted).  Importantly, proof of extraordinary circumstances alone will not suffice; rather, a § 2255 petitioner must show that "those circumstances *caused* him to miss the original filing deadline."  *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (emphasis added); *see also Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

As discussed above, Anderson's filing deadline was one year from the release of the April 1, 2016 report.  Anderson filed his § 2255 Motion on April 3, 2019, over two years too late, and he has failed to establish that he diligently pursued his rights in the three-year period between publication of the report and the filing date.  Furthermore, Anderson has not demonstrated that any extraordinary circumstance caused his failure to timely file the § 2255 Motion.  Even assuming the state's attorneys' failure to disclose certain documents earlier than they did *could possibly* constitute "extraordinary circumstances" to excuse the delay, Anderson has not shown that it did in fact prevent him from timely filing his Motion in this case, particularly considering that the withheld documents pertained to Farak's drug use in the lab in 2011 and Anderson was convicted five years earlier.  Accordingly, Anderson is not entitled to equitable tolling.

## III. Merits of § 2255 Motion

Even if Anderson's § 2255 Motion were timely, it fails on the merits.

28 U.S.C. § 2255(a) provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano*, 83 F.3d at 590 (internal quotation marks omitted). In the Second Circuit, § 2255 review is "narrowly limited in order to preserve the finality of criminal sentences." *Id.* (internal quotation marks omitted).

Anderson claims he is entitled to relief because the continued imposition of his federal sentence, after vacatur of his 2006 state conviction, results in a "fundamental miscarriage of justice." (Doc. 101 at 1.) Specifically, Anderson asserts that his sentence violates due process because it was "enhanced" by his now-vacated 2006 state marijuana conviction. (*Id.* at 3.) For the reasons explained below, the court disagrees and finds that Anderson has failed to meet the "high bar" required for defendants to upset a federal sentence under § 2255. *Hoskins*, 905 F.3d at 103.

16

First, even before vacatur of the 2006 conviction, Anderson's Rule 11(c)(1)(C) plea agreement provided for a sentence below the Guidelines range of 262–327 months. (*See* Doc. 47 at 6, ¶ 16.) The agreement also allowed him to avoid charges that would have imposed a mandatory minimum sentence of 180 months, 41 months more than the sentence he received. (Doc. 100 at 14:1–7, 41:5–19.) Under these circumstances, even including the 2006 marijuana conviction, Anderson "left the bargaining table with a deal that secured him real benefit, hardly indicating a miscarriage of justice." *Hoskins*, 905 F.3d at 104.

Second, Anderson's sentence was not "increased based on [the] conviction[] that [was] subsequently vacated." *United States v. Fernandez*, Crim. No. 13-10282-DJC, 2019 WL 403413, at *4 (D. Mass. Jan. 31, 2019) (slip op.) (first alteration in original) (quoting *Cuevas v. United States*, 778 F.3d 267, 274 (1st Cir. 2015)). There is no evidence that the court considered the 2006 conviction at all as part of its sentencing determination under 18 U.S.C. § 3553(a). While the court distinguished Anderson from other drug traffickers to justify not imposing a sentence at the high end of the stipulated range, the court specifically stated at Anderson's sentencing hearing that the reason for the 19-month addition to the 120-month minimum sentence was "to reflect [Anderson's possession of] firearms and . . . threatening [of] people." (Doc 100 at 46:5–6.) Anderson's 2006 marijuana conviction was not even referenced at the hearing.

Additionally, it is unclear from the PSR whether the 2006 marijuana conviction contributed any criminal history points or increased the advisory

17

Guidelines range. The PSR adds two criminal history points and references both the marijuana conviction and a stolen property conviction. (PSR at 14, ¶ 56.) However, the PSR fails to clarify which conviction(s) the points were allocated for. According to the government, the stolen property conviction accounts for both of the criminal history points under USSG § 4A1.1(b), and thus the marijuana conviction "was not even accounted for in the criminal history calculation." (Doc. 108 at 4 n.2.) Anderson responds that "it is demonstrably not true that the marijuana possession conviction added nothing to Mr. Anderson's criminal history," asserting that the PSR indicates that the marijuana conviction "counted for [one] point under [USSG] § 4A1.1(c)." (Doc. 111 at 9 n.6.) The court need not resolve this issue, however, because even assuming the marijuana conviction contributed both criminal history points, and then subtracting those points from the CHC calculation, Anderson's CHC category remains the same. Specifically, according to the PSR, Anderson's prior convictions generated 12 criminal history points (PSR at 16, ¶ 61); subtracting two points from those 12 yields 10 points, which still leaves Anderson with a CHC of V. Accordingly, even without the 2006 state marijuana conviction, Anderson's advisory Guidelines range remains at 262–327 months. (*Id.* at 23, ¶ 94.)

Finally, Anderson's ultimate 139-month sentence falls well below the applicable Guidelines range and at the low end of the Rule 11(c)(1)(C) stipulated range of 120–262 months. There is simply no indication that Anderson's 2006 state marijuana conviction played any role in the court's decision to impose 19 months above the agreed-upon 120-month minimum sentence. Thus, the vacatur of the

18

state conviction has no effect on Anderson's bargained-for, below-Guidelines sentence; and it cannot be said that the sentence imposed constituted a fundamental miscarriage of justice.

## Conclusion

For these reasons, Anderson's § 2255 Motion is barred by *Johnson* and the one-year statute of limitations set forth in § 2255(f). Moreover, Anderson has failed to demonstrate that the vacatur of his 2006 state conviction renders his 139-month federal sentence a miscarriage of justice. Accordingly, I recommend that Anderson's § 2255 Motion to Correct Sentence (Doc. 101) be DENIED.

Further, the court should decline to issue a certificate of appealability because Anderson has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Generally, a movant meets this burden by demonstrating that "reasonable jurists could debate whether . . . the [motion] should have been resolved in a different manner or that the issues presented [a]re adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Here, Anderson has not met this burden, given that: (1) Anderson's claim is untimely under § 2255(f), and (2) letting Anderson's federal sentence stand does not constitute a miscarriage of justice despite the vacatur of his 2006 state marijuana conviction.

Dated at Burlington, in the District of Vermont, this 4th day of December 2019.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).